BURNS v. TEXAS MIDLAND R. R. et al. (No. 7121.)

(Court of Civil Appeals of Texas. Dallas. May 16, 1914. Rehearing Denied June 6, 1914.)

1. NEGLIGENCE (§ 23*) — ACTS OR OMISSIONS CONSTITUTING—ATTRACTIONS FOR CHILDREN.

It could not be said that a boy was attracted or allured to the local office of a railroad and a telegraph company by a loaded pistol in an unlocked drawer or other condition of the premises, so they should have foreseen an accidental shooting in the absence of the agents, where it was not shown that he knew the pistol was there.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 33, 34, 129; Dec. Dig. § 23.*]

2. NEGLIGENCE (§ 22*)—WEAPONS—RIGHT TO KEEP.

A railroad and a telegraph company had a right to keep a loaded pistol in their local office for the protection of the money and property kept therein.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 31, 32; Dec. Dig. § 22.*]

3. MASTER AND SERVANT (§ 304*) — TORTS OF SERVANT—LIABILITY OF MASTER.

A railroad and a telegraph company were not liable because a boy in their employ got a loaded pistol, kept in an unlocked drawer of their private office, while temporarily left in charge by the agents, and shot another boy in play, where, though he had previously got the pistol out without permission, he had never before been known to use it in play.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1226–1229; Dec. Dig. § 304.*]

4. MASTER AND SERVANT (§ 302*) — INJURIES TO THIRD PERSONS—SCOPE OF EMPLOYMENT.

A railroad and a telegraph company were not responsible for the act of a boy in their employ, while temporarily left in charge of the office by the agents, getting out a pistol kept in the office and shooting another boy in play; his conduct being the reckless, malicious sport of a bad boy, and in no way connected with defendants' business.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1217–1221, 1225, 1229; Dec. Dig. § 302.*]

Appeal from District Court, Kaufman County; F. L. Hawkins, Judge.

Action by Audie Burns, by his guardian, George Burns, against the Texas Midland Railroad and another. Judgment for defendants, and plaintiff appeals. Affirmed.

Lee R. Stroud and Wynne & Wynne, all of Kaufman, for appellant. Dashiell & Coon, of Terrell, and N. L. Lindsley and E. G. Senter, both of Dallas, for appellees.

TALBOT, J. This action was brought by the appellant, Audie Burns, through his guardian, George Burns, against the appellees, Texas Midland Railroad and the Western Union Telegraph Company to recover damages for personal injuries alleged to have been received as the result of being shot with a pistol by Albert Watson. A general demurrer to plaintiff's petition was sustained by the court, and the case dismissed. From this judgment the plaintiff appealed, and assigns as error the action of the court in sustaining the general demurrer.

The petition, omitting formal parts, is as follows:

"Audie Burns, a minor about 13 years of age, by his father, Geo. Burns, duly appointed and qualified as his guardian by the probate court of Kaufman county, who with his father both reside in Kaufman county, Tex., in the city of Kaufman, here amend plaintiff's last petition herein, filed the 28th day of December, 1911, with leave of the court, and makes the Western Union Telegraph Company a party defendant with Texas Midland Railroad; and, complaining of the Texas Midland Railroad and of the Western Union Telegraph Company, the plaintiff says that the Texas Midland Railroad is and was, when the injury herein complained of occurred, a railroad corporation incorporated under the laws of Texas, operating its railroad through Kaufman and other counties in this state, and has and then had its office and local agents, Pat Hammond and W. A. McWilliams, in said ticket office at Kaufman, Tex., by and through which agents it was in part operating said railroad and said office for its exclusive benefit as a railroad company, that said Western Union Telegraph Company was also duly incorporated under the law and was and is a telegraph corporation operating its line of telegraph, with offices and equipment in said

office in Kaufman, Tex., and in Kaufman and other counties; and plaintiff alleges and believes, and therefore charges the fact to be, that said McWilliams was also the local agent of the Western Union Telegraph Company, and that the boy Albert Watson was an agent of said telegraph company, both of whom occupied said office and performed duties for defendant Western Union Telegraph Company; but what other agent or agencies said Western Union Telegraph Company had operating and assisting in operating its line of telegraph aforesaid and its equipment in and connected with said office in Kaufman this plaintiff is not fully advised and does not further know than that it was operating its said telegraph through agents and agencies and through the agents aforesaid; upon information and belief plaintiff says and charges that said lad Albert Watson was also the agent of the Texas Midland Railroad.

"Now for cause of action plaintiff says that heretofore, on the 20th day of May, 1911, defendant Texas Midland Railroad and said Western Union Telegraph Company had money then and usually had property then and usually belonging to them in said ticket office, used as the office of both defendants; and by and through their agents aforesaid and agencies aforesaid acting for them and each of them in their own behalf, in the line of their duty, had a right to keep and did keep in said office for the protection of their rights, moneys, and property a loaded pistol, which they had a right to keep and did keep in said ticket office so used by them and each of them in Kaufman, Tex.; but defendants and each of them then and there kept the said pistol in a negligent and wrongful way and manner, and kept it negligently accessible to children and to the child Audie Burns' and to the child Albert Watson, and others who were allowed to frequently visit said office; the said Albert Watson being very young, reckless, and a disobedient boy, and actually then and there employed by defendants in and as an occupant of said office by the Western Union Telegraph Company and by a codefendant, the railroad, and as a servant of the railroad. Now plaintiff further says that while the agents and employés of the defendants were out of the office, and the same was unguarded by the defendants, and was left open to small boys, the said Albert Watson and the child Audie Burns and another child went to or near said office as they had a right to do and had been usually permitted and licensed to do, and their employé, Albert Watson himself, went into said office; that the said pistol was then left exposed and accessible to said children and to Albert Watson in said office and in a low, unfastened drawer, and that said office and its surroundings, together with its contents, as well as the dangerous pistol, were all unusually attractive to such children and where they would likely go, and where the boys and children named were likely to get and play with said pistol and to snap it at each other and to accidentally discharge the same with great danger, as defendants and their agents aforesaid well knew, and ought to have known; that the Watson boy, as defendants and their agents and employés acting for both and each of them, well knew, and ought to have known, was an indiscreet and reckless boy and was in said office a great deal, in fact was and had been by defendants kept employed there, and had before that gotten said dangerous pistol and handled the same without permission, and was likely to do so again; that on the date aforesaid, and while the plaintiff, Audie Burns, and other children were at or about the door of said ticket office or near thereto, the agents of both and each defendant negligently went away from said office and depot grounds, leaving said dangerous and deadly pistol accessible to all said children; that the railroad agent, Pat Hammond, was 'away up in town, quite a distance from the office; that W. A. McWilliams, the agent and telegraph operator, was also out and gone away from the office and depot grounds, and in another part of town; that Hammond had first gone away, and when said McWilliams left he knowingly left all said children there at or near the open door of the office with said Watson, whom he knew had gotten the pistol before, and defendants wholly failed to care for and guard the said pistol or to exercise any care to prevent its doing damage or being caused to do damage; that one of said children, Albert Watson, then and there got said pistol out and was snapping it at these other children, and thus frightening them away from the office and chasing them around outside, and had been told by defendants and their agents to keep persons out at such times as they would be gone away from the office, and was thus using the pistol in part to keep said children away and out of the office by frightening them; that Albert Watson then went back into the office with the loaded pistol, which on that occasion was partly loaded and partly unloaded, and sat down on a desk in the office, with pistol in hand; that Audie Burns then came near said office door and looked into it through an opening, when Albert again attempting to snap the pistol at him, it fired, the ball entering the front part of his head and passing back through the brain and coming out at the back of his head, which caused him to drop as if lifeless and the brain to protrude and come out from his forehead, from which he suffered great shock and pain and injury for a long time, and from which his brain and physical system, health, and constitution are permanently injured and weakened, as well as his mind, all to his damage at least $10,-000; that the conduct of the defendants in leaving such dangerous and deadly weapon habitually exposed in said office, their keeping said negligent boy Watson for a long time in contact therewith, their permitting and licensing small boys and plaintiff to visit said office and the place where he got injured, their leaving their attractive office and their deadly pistol within their easy access, their going away from depot and grounds to other parts of town, with no one in charge but the lad Watson, their failure to turn the keys on the drawer holding said pistol, their leaving their office door unlocked and the bunch of small boys there, their retaining for a long time said negligent, reckless, and disobedient boy in their office, their permitting the public to frequent said office and sit and loiter therein, their failure to exclude plaintiff and other small boys instead of entertaining them, and the other facts recited, all constituted great and concurrent negligence on the part of both defendants in bringing about the serious calamity and injury here complained of, whereby the defendants, acting together in their negligence, and their failure to warn plaintiff, or his parents who lived conveniently close, and failure to use a high degree of care to prevent injury from the extrahazardous and deadly pistol, has laid them liable unto plaintiff because of injuries and his mental anguish and fear of death, in the sum named.

"Wherefore plaintiff, Audie Burns, prays that defendants be cited to answer this suit, and that, upon a fair and final hearing, he have judgment for his damages $10,000 and for cost of suit."

[1] We are of opinion the court correctly ruled on the demurrer, and that the assignment should be overruled. The petition, as contended by appellees, fails to show any attraction or allurement which could have induced the plaintiff to make the premises of the defendants a playground. The pistol with which the injury complained of was inflicted was kept by defendants in an unfastened drawer in their office, but it does not appear that plaintiff knew it was there and,

with a view of securing possession of it, went upon defendants' premises.

[2, 3] It is alleged by plaintiff that defendants had money and property in their office and had the right to keep in said office, for the protection of said property, a loaded pistol. This we think correctly states the rights of defendants, and we are unable to see how the temporary absence of the agents, Hammond and McWilliams, from defendants' office, a private one, can subject defendants to a charge of negligence, because a boy in their employ takes a pistol from an unfastened or unlocked drawer and intentionally or mischievously or wantonly shoots a boy or person on the outside of the office.

[4] The allegations of the petition are insufficient to show that the boy Albert Watson was charged with any duty to the defendants, as an employé, which gave him control of the pistol, or authorized him to shoot the plaintiff. On the contrary, the allegations of the petition, as we understand and construe them, affirmatively show that the act of Watson in shooting the plaintiff was committed in reckless sport and not in the furtherance of any business of the defendants or either of them. According to the allegations of the petition, the plaintiff was standing on the outside and looking into the office when he was shot, and was not attempting to enter the office or to molest the property of defendants; the boy Watson had just before this gotten the pistol and had been chasing plaintiff around on the outside of the office, snapping the pistol at him in boyish sport; Watson then went back into the office and sat down on a desk with the pistol in his hand; the plaintiff then came near the office door and looked through the opening; Watson, in continuation of the reckless, boyish sport, begun on the outside, attempted to snap the pistol at him again, when it fired, shooting the plaintiff in the head. It does not appear that these acts of Watson were within the scope of his employment or in furtherance of the master's business. It is alleged that the boy Watson, prior to the occasion in question, had gotten possession of the pistol and handled it without permission, but it is not alleged that he or any other boy had ever gotten the pistol out of the drawer with the knowledge of defendants, or either of them, and used it in play. Nor is it shown that anything occurred before the unfortunate accident in question which should have caused defendants to anticipate that some child might probably be injured similarly to the way in which plaintiff was injured by leaving the pistol in an unlocked drawer.

The facts alleged do not, we believe, make a case in which the doctrine of the turntable cases is applicable, nor can the rule of respondeat superior, under the facts and circumstances alleged, be invoked. It cannot be said, it occurs to us, that the allegations of plaintiff's petition are sufficient to show that he may have been lured to the office of defendants by the pistol left in the unlocked drawer or any other condition of defendants' premises, and that defendants should therefore have foreseen that he or some other child might be injured by the loaded pistol. And the act of Watson, resulting in plaintiff's injury, was in no way related to the business of defendants, or either of them. The petition describes his conduct as the reckless, malicious sport of a bad boy.

The case is not ruled by those decisions involving the liability of one who negligently left explosives where they could be found or taken by children, or who sells an explosive to a young child, knowing that it has no experience or knowledge of its use, nor by those in which it has been held that the master was liable, where the shooting was done while the servant was in the execution of his master's commands, and similar cases. Our conclusion is that the facts alleged fail to show that the act of the boy Watson in shooting the plaintiff was the result of actionable negligence on the part of the defendants, and that the judgment of the court below should be affirmed. It is therefore accordingly so ordered.

Affirmed.